1   LIVIA M. KISER (SBN 285411)
    *lkiser@kslaw.com*
2   KING & SPALDING LLP
    110 N Wacker Drive, Suite 3800
3   Chicago, IL 60606
    Tel: (312) 995-6333
4   Fax: (312) 995-6330

5   KERI E. BORDERS (SBN 194015)
    *kborders@kslaw.com*
6   KING & SPALDING LLP
    633 West Fifth Street, Suite 1600
7   Los Angeles, CA 90071
    Tel: (213) 443-4355
8   Fax: (213) 443-4310

9   *Attorneys for Defendant*
    WALMART, INC.

10

                    **UNITED STATES DISTRICT COURT**
11
                    **EASTERN DISTRICT OF CALIFORNIA**
12

13  GRACE NAVARRO, CHATHAM                    Case No. 1:24-cv-00288-JLT-SAB
    MULLINS, CHRISTOPHER EMERY,
14  ANTHONY RYAN, SKYLAR WILLIAMS,            **DEFENDANT WALMART, INC.'S**
    KARA PHILBRICK, NICOLE ARAUJO,            **MEMORANDUM OF POINTS AND**
15  NANEA TANNEHILL, RAMON SOTO,              **AUTHORITIES IN SUPPORT OF MOTION**
    BRETT A. GOODEN, ALICIA M.                **TO DISMISS THE AMENDED**
16  BALDWIN, KENDRALANNE STAFFORD,            **CONSOLIDATED COMPLAINT**
    DAWN TIMMONS, KATHLYN AVERITT,
17  THERESA DEAN, JENNIFER IRIZARRY,
    JESSICA FARIAS, CHARLENE DOTSON           Hearing Date: July 9, 2025
18  ORANGE, KELLI HUNT, JENNIFER              Hearing Time: 9:00 a.m.
    HARPER, DEAN P. DAMICO, JARED J.          Courtroom: 4, 7th Floor
19  SMITH, DAWN MARTIN, LORRIE
    POTTER, TIFFANY RICHMOND,                 Action Filed: March 8, 2024
20  JASMINE N. COOPER, ALEXANDRA              Trial Date: None Set
    DONATO, KRISTIN DAVIS, APRIL
21  DIGGINS, ERICA L. MILLBANK, SCOTT
    LINMAN, LINDSEY SMITH, and
22  STEPHANIE WELCH on behalf of
    themselves, and all others similarly situated,
23
                        Plaintiffs,
24
                vs.
25
    WALMART, INC.,
26
                        Defendants.
27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 3

   A.    FDA's Approval Of OTC Acne Medications Containing BPO ................................ 3

   B.    Valisure's Citizen Petition And FDA's Rejection Of Its Findings ......................... 4

   C.    Plaintiffs' Initial Consolidated Complaint ............................................................. 6

   D.    Plaintiffs' Amended Consolidated Complaint ........................................................ 7

III.  ARGUMENT ................................................................................................................. 8

   A.    Legal Standard ........................................................................................................ 8

   B.    Federal Law Preempts Plaintiffs' Claims .............................................................. 8

      1.    Federal Law Expressly Preempts Plaintiffs' Claims Challenging The Labeling And Manufacturing Of The Products ........................................................... 8

      2.    Federal Law Impliedly Preempts Plaintiffs' State-Law cGMP Claims ................... 12

   C.    Plaintiffs' cGMP Regulations Flunk The Rule 8 Pleading Standard ................... 14

   D.    Plaintiffs Lack Article III Standing ..................................................................... 17

   E.    Plaintiffs Lack Standing To Pursue Injunctive Relief ......................................... 19

   F.    Plaintiffs Do Not Adequately Allege Consumer Deception Or False Advertising ............. 20

   G.    Plaintiffs' State Law Claims Fail For Additional Independent Reasons ............................. 23

      1.    Plaintiffs Cannot State A Claim For Breach of Implied Warranty .......................... 23

      2.    Plaintiffs' Negligent Misrepresentation Claims Fails ........................................ 24

      3.    Plaintiffs' Unjust Enrichment Claim Fails ...................................................... 24

IV.   CONCLUSION ........................................................................................................... 25

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AcBel Polytech v. Fairchild Semiconductor Int'l, Inc.*,
  2014 WL 4656608 (D. Mass. Sept. 12, 2014) ........................................................22

*In re Actimmune Mktg. Litig.*,
  2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ..........................................................23

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ...................................................................22

*Argueta v. Walgreens Co.*,
  2024 WL 5186825 (E.D. Cal. Dec. 20, 2024) ........................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................8, 15

*Avrin v. Mentor Worldwide LLC*,
  2024 WL 1151672 (C.D. Cal. Mar. 15, 2024) ........................................................13

*Bass v. Stryker Corp.*,
  669 F.3d 501 (5th Cir. 2012) .................................................................................15

*Benzoyl Peroxide Acne Treatment Drug Products v. Alchemee, LLC et al.*,
  Case No. 24-6431 (9th Cir. Oct. 22, 2024) ..............................................................6

*In re: Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  MDL No. 3120 (J.P.M.L.) ........................................................................................6

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) .................................................................................18

*Bodle v. Johnson & Johnson Consumer Inc.*,
  2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) ......................................................19

*Borchenko v. L'Oreal USA, Inc.*,
  389 F. Supp. 3d 769 (C.D. Cal. 2019) ...................................................................14

*Bowen v. Energizer Holdings, Inc.*,
  118 F.4th 1134 (9th Cir. 2024) ..............................................................................11

*Bruno v. BlueTriton Brands, Inc.*,
  2024 WL 3993861 (C.D. Cal. Aug. 8, 2024)..........................................................14

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001)..........................................................................................12, 13

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

*Carter v. Novartis Consumer Health, Inc.*,
  582 F. Supp. 2d 1271 (C.D. Cal. 2008) ...................................................................9

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ................................................................................8

*Cippolone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992) ................................................................................................9

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................................19

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..............................................................................................19

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ................................................................................24

*Conley v. St. Jude Med., LLC*,
  482 F. Supp. 3d 268 (M.D. Pa. 2020) ...................................................................15

*D'Addario v. Johnson & Johnson*,
  2021 WL 1214896 (D.N.J. Mar. 31, 2021) ...........................................................15

*Dannix Painting, LLC v. Sherwin-Williams Co.*,
  732 F.3d 902 (8th Cir. 2013) ................................................................................24

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ...............................................................................20

*Davidson v. Sprout Foods, Inc.*,
  106 F.4th 842 (9th Cir. 2024) ...............................................................................14

*Devane v. L'Oreal USA, Inc.*,
  2020 WL 5518484 (S.D.N.Y. Sept. 14, 2020) .......................................................22

*Diemert v. Johnson*,
  299 N.W.2d 546 (N.D. 1980) ................................................................................22

*Driscoll v. Standard Hardware*,
  785 N.W.2d 805 (Minn. Ct. App. 2010) ................................................................22

*Duchimaza v. Niagara Bottling, LLC*,
  619 F. Supp. 3d 395 (S.D.N.Y. 2022) ...................................................................24

*Dwyer v. Allbirds, Inc.*,
  598 F. Supp. 3d 137 (S.D.N.Y. 2022) ...................................................................20

*Ebrahimi v. Mentor Worldwide LLC*,
  2017 WL 4128976 (C.D. Cal. Sept. 15, 2017) ................................................13, 15

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

*Estrada v. Johnson & Johnson*,
2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) ..........................................................................18

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..................................................................................23

*FMC Corp. v. Holliday*,
498 U.S. 52 (1990)......................................................................................................................9

*Forest v. E.I. DuPont de Nemours & Co.*,
791 F. Supp. 1460 (D. Nev. 1992) ..........................................................................................23

*Frere v. Medtronic, Inc.*,
2016 WL 1533524 (C.D. Cal. Apr. 6, 2016) ..........................................................................14

*Gagetta v. Walmart, Inc.*,
646 F. Supp. 3d 1164 (N.D. Cal. 2022) ..................................................................................23

*Gisvold v. Merck & Co.*,
62 F. Supp. 3d 1198 (S.D. Cal. 2014) .......................................................................................9

*Griffin v. Medtronic, Inc.*,
2017 WL 4417821 (N.D. Ill. Oct. 5, 2017)..............................................................................23

*Harris v. Topco Assocs., LLC*,
538 F. Supp. 3d 826 (N.D. Ill. 2021) ................................................................................11, 12

*Hayden v. Retail Equation Inc.*,
2023 WL 2629885 (C.D. Cal. Mar. 2, 2023)...........................................................................20

*Heidbreder v. Carton*,
645 N.W.2d 355 (Minn. 2002)................................................................................................22

*Hennessey v. Gap, Inc.*,
2022 WL 4447399 (E.D. Mo. Sept. 23, 2022).........................................................................24

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .........................................................................18

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .............................................................................................20, 21

*Howard v. Alchemee, LLC*,
2024 WL 4272931 (C.D. Cal. Sept. 19, 2024) ............................................................. *passim*

*Huertas v. Bayer U.S., LLC*,
2022 WL 3572818 (D.N.J. Aug. 19, 2022) .............................................................................19

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018)....................................................................................................17

iv

*Justice v. Bestway (USA), Inc.*,
  2024 WL 3718724 (E.D. Mo. Aug. 8, 2024) ........................................................................23

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ..........................................................................................23

*Kuecker Logistics Grp., Inc. v. Greater Omaha Packing Co., Inc.*,
  2023 WL 3198418 (D. Neb. Apr. 14, 2023) .........................................................................24

*Kulp v. Munchkin, Inc.*,
  678 F. Supp. 3d 1158 (C.D. Cal. 2023) ................................................................................20

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) ...........................................................................................20, 21

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..............................................................................................................17

*Manley v. Hain Celestial Grp., Inc.*,
  417 F. Supp. 3d 1114 (N.D. Ill. 2019) ..................................................................................24

*Myers v. BMW of N. Am., LLC*,
  2016 WL 11791913 (N.D. Cal. Dec. 19, 2016) .....................................................................21

*Nat. Res. Def. Council v. U.S. Food & Drug Admin.*,
  710 F.3d 71 (2d Cir. 2013) ......................................................................................................3

*Nelson v. John Paul Mitchell Systems*,
  2024 WL 4265198 (N.D. Ill. Sept. 23, 2024) .......................................................................19

*Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*,
  48 F.4th 1040 (9th Cir. 2022) ...............................................................................................14

*Nicolet, Inc. v. Nutt*,
  525 A.2d 146 (Del. 1987) ......................................................................................................22

*O'Dea v. RB Health (US LLC)*,
  -- F. Supp. 3d --, 2025 WL 1212835 (C.D. Cal. Apr. 22, 2025) ................................... *passim*

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ..............................................................................................................22

*Paradowski v. Champion Petfoods USA, Inc.*,
  2023 WL 3829559 (2d Cir. June 6, 2023) ............................................................................22

*Perez v. Nidek Co.*,
  657 F. Supp. 2d 1156 (S.D. Cal. 2009) .................................................................................13

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013) ....................................................................................12, 13, 14

*Poozhikala v. Medtronic Inc.*,
2022 WL 1076173 (C.D. Cal. Apr. 7, 2022) .......................................................................13

*In re Procter & Gamble Aerosol Prod. Mktg. & Sales Pracs. Litig.*,
2022 WL 20178514 (S.D. Ohio Oct. 28, 2022).....................................................................11

*Provanzano v. MTD Prods. Co.*,
215 F. Supp. 3d 134 (D. Mass. 2016) .....................................................................................23

*Resnick v. Hyundai Motor Am., Inc.*,
2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) .......................................................................24

*Riva v. Pepsico, Inc.*,
82 F. Supp. 3d 1045 (N.D. Cal. 2015) ......................................................................................5

*Robie v. Trader Joe's Co.*,
2021 WL 2548960 (N.D. Cal. June 14, 2021)........................................................................24

*Roe v. Ford Motor Co.*,
2021 WL 2529825 (E.D. Mich. 2021).....................................................................................22

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) ..................................................................................................8

*Seale v. GSK Consumer Health, Inc.*,
718 F. Supp. 3d 1208 (C.D. Cal. 2024) .................................................................................12

*Short v. Hyundai Motor Co.*,
444 F. Supp. 3d 1267 (W.D. Wash. 2020)..............................................................................22

*Simpson v. California Pizza Kitchen, Inc.*,
989 F. Supp. 2d 1015 (S.D. Cal. 2013)...................................................................................18

*Smoter v. Mentholatum Co., Inc.*,
2025 WL 273437 (N.D. Ill. Jan. 17, 2025)...............................................................................9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..............................................................................................................8, 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
781 F. Supp. 2d 955 (N.D. Cal. 2011) ...................................................................................23

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................................23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)................................................................................................................19

*Tripolskiy v. Boston Sci. Corp.*,
2023 WL 5440783 (C.D. Cal. June 23, 2023) ..................................................................15, 16

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

*Truss v. Bayer Healthcare Pharms. Inc.*,
  2022 WL 16951538 (S.D.N.Y. Nov. 15, 2022) ............................................................. 9, 10, 11

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017) ................................................................................ 22

*Wallace v. ConAgra Foods, Inc.*,
  747 F.3d 1025 (8th Cir. 2014) ................................................................................................ 18

*Weber v. Allergan, Inc.*,
  940 F.3d 1106 (9th Cir. 2019) ................................................................................................ 15

*Wilson v. Frito-Lay N. Am., Inc.*,
  260 F. Supp. 3d 1202 (N.D. Cal. 2017) ................................................................................... 5

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ................................................................................................ 20

*Winters v. Ridgewood Indus., LTD.*,
  2020 WL 3035217 (E.D. Cal. June 5, 2020) ......................................................................... 17

**Statutes**

21 U.S.C. § 301 ............................................................................................................................... 1

21 U.S.C. § 337(a) ........................................................................................................................ 12

21 U.S.C. § 379r .................................................................................................................. 1, 9, 13

**Other Authorities**

21 C.F.R. § 330.10 .......................................................................................................................... 3

21 C.F.R. § 333.301 .................................................................................................................. 1, 4

21 C.F.R. § 333.310 ........................................................................................................................ 3

21 C.F.R. § 333.350 .................................................................................................................... 4, 9

75 Fed. Reg. 9767 ...................................................................................................................... 1, 3

75 Fed. Reg. 9773 .................................................................................................................... 4, 11

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

## I.     INTRODUCTION

This lawsuit is one of many filed by Plaintiffs' counsel against manufacturers of over-the-counter ("OTC") acne medications containing benzoyl peroxide ("BPO") like Walmart Inc.'s Equate-branded acne treatment products (the "Products").[1] Plaintiffs' initial complaint relied upon a report issued by a discredited online testing company, Valisure LLC, and contended that BPO unavoidably degraded into benzene under normal storage conditions. Accordingly, Plaintiffs asserted that all OTC BPO products were inherently defective, and the labeling of the Products was deceptive because it failed to disclose the presence of benzene in the Products. Faced with the unavoidable conclusion (after repeated dismissals of materially identical lawsuits against other manufacturers of OTC BPO products) that these claims were preempted because they directly contradict federal law and the express finding by the Food and Drug Administration ("FDA") that BPO is "generally recognized as safe and effective" for the treatment of acne,[2] Plaintiffs amended their complaint. While Plaintiffs still argue that BPO degrades into benzene, they now contend that the degradation of BPO into harmful levels of benzene could be avoided by formulating the products differently or by following unidentified "quality control and manufacturing standards" allegedly required by FDA regulations. *See* Amended Consolidated Complaint ("ACC") ¶¶ 4, 104. Plaintiffs' attempt to dress up their claims as manufacturing defects fails, however, because the ACC is still based on the same underlying theory (that all BPO products contain benzene and are dangerous) and is still directly contrary to federal law.

Accordingly, the court should reject the entirety of the ACC for the following reasons:

***First***, Plaintiffs' claims remain expressly and impliedly preempted by the Food, Drug, and Cosmetic Act ("FDCA"). The FDCA preempts state law that would impose non-identical requirements from those set by FDA regarding OTC BPO products. *See* 21 U.S.C. § 379r(a)(1). Plaintiffs cannot use state law to alter the formulation or manufacturing processes for BPO products, set a limit for the

---

[1] In the ACC, Plaintiffs challenge six disparate types of products: Equate® Beauty Acne Foaming Cleanser 10% BPO, Equate® Beauty Maximum Strength Acne Wash 10% BPO, Equate® Beauty Acne Treatment Gel 10% BPO, Equate® Beauty Daily Acne Control Cleanser Cream 10% BPO, Equate® Beauty Purifying Cleanser 2.5% BPO, and Equate® Beauty Repairing Lotion 2.5% BPO.

[2] *See* Classification of Benzoyl Peroxide as Safe and Effective and Revision of Labeling to Drug Facts Format; Topical Acne Drug Products for Over-the-Counter Human Use; Final Rule, 75 Fed. Reg. 9767 (Mar. 4, 2010); 21 C.F.R. § 333.301, *et. seq.* BPO acne medications, like the Products, have been sold in the United States for decades without incident or recall related to benzene.

1

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

presence of benzene in the Products of 2 ppm, or to require the inclusion of additional warnings on BPO products regarding benzene that are not required by federal law. *See Howard v. Alchemee, LLC*, 2024 WL 4272931, at *10 (C.D. Cal. Sept. 19, 2024) (claims that the labeling of BPO acne medication was deceptive because it failed to disclose the presence of benzene were preempted and dismissed with prejudice); *O'Dea v. RB Health (US LLC)*, -- F. Supp. 3d --, 2025 WL 1212835, at *5-7 (C.D. Cal. Apr. 22, 2025) (claims for violation of current good manufacturing processes based on the argument that BPO acne medication had a 2 ppm limit for benzene were preempted and dismissed with prejudice).

Plaintiffs' claims based on alleged violations of FDA's regulations regarding current Good Manufacturing Practices ("cGMP") for the manufacture of OTC drugs are also impliedly preempted because there is no private right of action to enforce these FDA regulations.

**Second**, even if their claims were not preempted, Plaintiffs cannot plausibly allege that Walmart violated cGMP regulations in the manufacturing of each one of the six different types of Products. There are no plausible allegations in the ACC that any specific lot or product contained unsafe levels of benzene (in excess of 2 ppm) because of the failure to utilize cGMP, much less what specific failure was responsible. Plaintiffs also do not grapple with the issue that they have challenged multiple different types of products (cleansers, creams, and gels) and how their vague allegations would account for the different manufacturing processes for each one. Moreover, this alternative theory also directly contradicts Plaintiffs' underlying theory of deception—that all BPO products contain benzene because BPO unavoidably degrades into benzene over time. If that is the case, as Plaintiffs allege, then the alleged potential presence of benzene cannot be the result of a purported failure to comply with cGMP regarding the manufacture of OTC BPO acne medication.

**Third**, Plaintiffs lack Article III standing because they do not (and cannot) plausibly allege that they suffered an injury-in-fact. Plaintiffs do not allege a physical injury or plausibly allege that by using the Products they were exposed to benzene at all, much less at levels that could cause physical harm. This is particularly so because Plaintiffs do not allege that they tested each of the six different types of Products they challenge, let alone their own Products. Absent plausible factual allegations demonstrating that purchasers of the Products were at risk of harm, the Products performed their

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

1    intended function, and Plaintiffs received the benefit of their bargain. Plaintiffs' subjective belief that

2    the potential presence of benzene rendered the Products unacceptable does not establish that the

3    Products they purchased are objectively worth less than the price that they paid. Plaintiffs also lack

4    standing to seek injunctive relief because they do not plausibly allege that they will suffer future injury.

5         ***Finally***, Plaintiffs' claims fail for additional reasons, including that Plaintiffs fail to allege

6    consumer deception and that Walmart owed them a duty to disclose, and Plaintiffs fail to state claims

7    for purported state common law violations. For these reasons, and as set forth more fully below, the

8    motion to dismiss the ACC should be granted with prejudice.

9    **II.    FACTUAL BACKGROUND**

10        **A.    FDA's Approval Of OTC Acne Medications Containing BPO**

11        OTC medications are regulated by FDA. The most common process to obtain FDA approval

12   of an OTC product is through a "monograph" process. A monograph is a set of regulations governing

13   the conditions under which a category of drugs may be marketed without a prescription, including the

14   approved active ingredients and the labeling requirements. 21 C.F.R. §330.10; *Nat. Res. Def. Council*

15   *v. U.S. Food & Drug Admin.*, 710 F.3d 71, 75 (2d Cir. 2013) ("Like a recipe, each monograph sets out

16   the FDA-approved active ingredients for a given therapeutic class of OTC drugs and provides the

17   conditions under which each active ingredient is [generally recognized as safe and effective].").

18        The monograph that covers OTC BPO acne medication was first announced in March 2010

19   and was developed following a decades-long process, during which FDA specifically reviewed studies

20   and data on the carcinogenic potential of BPO. 75 Fed. Reg. 9767. FDA concluded that, at "the dosing

21   used by humans under actual use conditions," the studies "adequately exclude the possibility that

22   [BPO] is a carcinogen with a short or long latency period." *Id.* at 9770.  FDA adopted the most recent

23   monograph governing OTC BPO acne medications in 2020. *See* U.S. Food & Drug Admin., Over-the-

24   Counter Monograph (OTC) (M006) (the "2020 Monograph").[3] The 2020 Monograph expressly

25   permits the formulation of OTC acne medications with BPO as the active ingredient. 21 C.F.R. §

26   333.310(a). It also contains detailed labeling requirements for OTC acne medications, including

27

28   ───────────────
     [3]https://www.accessdata.fda.gov/drugsatfda_docs/omuf/OTC%20Monograph_M006-
     Topical%20Acne%20drug%20products%20for%20OTC%20Human%20Use%2011.23.2021.pdf

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

1  naming, indications for use, and user directions. *Id.* § 333.350. There are specific warnings that BPO
2  products must provide, none of which includes a reference to benzene. The 2020 Monograph does not
3  require manufacturers to warn that BPO contains or could degrade into benzene. *Id.* Any product that
4  complies with the relevant monograph's warning requirements "sufficiently informs the consumer of
5  the potential risks of using these products." 75 Fed. Reg. at 9773. OTC BPO acne medications, like
6  the Products, that comply with the 2020 Monograph are "generally recognized as safe and effective"
7  and are not misbranded. 21 C.F.R. § 333.301(a).

8       Different FDA regulations also control the standards for the manufacture of OTC medications,
9  known as cGMP. The cGMP regulations set forth minimum requirements for the methods, facilities,
10  and controls used in manufacturing, processing, packing and holding of a drug product. The ACC
11  identifies all Subparts and requirements contained in the cGMP regulations but does not identify which
12  (if any) of these manufacturing requirements purportedly were not met by Walmart, nor could they.
13  ACC ¶¶ 103. According to Plaintiffs, high temperature leads to the unavoidable degradation of BPO
14  into benzene. *Id*. ¶ 104. FDA does not recognize or endorse Plaintiffs' theory regarding the
15  unavoidable degradation of BPO and the 2020 Monograph does not require any specific formulations
16  or manufacturing processes to be used to prevent the alleged degradation of BPO into benzene.
17  Likewise, the 2020 Monograph does not set a limit for the presence of benzene.

18       **B.    Valisure's Citizen Petition And FDA's Rejection Of Its Findings**

19       On March 6, 2024, Valisure LLC, an online self-proclaimed "quality assurance" testing
20  company that regularly partners with Plaintiffs' counsel, filed a citizen petition with FDA reporting
21  that its testing of BPO acne medications detected the presence of benzene[4] ("Valisure Report").
22  According to the Valisure Report, it has been known in the scientific community for decades that BPO
23  degrades to benzene when exposed to heat over time, through well-known chemical processes. ECF
24  No. 24, Consolidated Complaint ("Compl."), ¶¶ 30-31, Valisure Report. Accordingly, the Valisure
25  Report argues that "***the specific problem with benzene in benzoyl peroxide products does not appear***
26

27  [4]Available at  https://assets-global.website-
28  files.com/6215052733f8bb8fea016220/65e8560962ed23f744902a7b_Valisure%20Citizen%20Petiti
   on%20on%20Benzene%20in%20Benzoyl%20Peroxide%20Drug%20Products.pdf .

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

***to be a contamination issue from a specific ingredient, but instead the inherent instability of the benzoyl peroxide molecule that breaks down and forms benzene.*** *Id.* at 8 (emphasis in original).

Valisure's testing methodology involved heating various BPO acne medications in a laboratory oven for extended periods of time before testing, including heating at 98.6°F for four weeks, at 122°F for three weeks, and/or at 158°F for almost three weeks. Valisure Report at 15-21; ACC ¶ 81-82. The Valisure Report contains results for only one sample of the Products (Equate Beauty Acne Wash 10% BPO) that was heated to 122°F for an extended period. Valisure Report at 15-22; ACC ¶ 81. This lawsuit followed the issuance of the Valisure Report and relies on the Valisure Report as the basis for the allegation that the Products contain benzene. Indeed, in the initial complaint, Plaintiffs parroted the Valisure Report and alleged that "BPO naturally degrades into benzene under normal storage and transport conditions (although, accelerated by exposure to heat and humidity)" and that it is a "naturally occurring chemical reaction that affects all BPO products." Compl. ¶¶ 13-40.

In response to Valisure's citizen petition, on March 11, 2025, FDA announced that it had initiated third-party testing of 95 acne products containing benzoyl peroxide for possible benzene contamination.[5] Of the 95 products tested, FDA identified only 6 products (none of which was an Equate product) for which it recommended a limited, voluntary recall[6] and noted that "more than 90% of tested products had undetectable or extremely low levels of benzene." *Id.* In direct rebuke of the Valisure Report, FDA recognized that it had found far fewer products with benzene contamination and reiterated: " FDA has continued to raise concern that use of unvalidated testing methods by third-party laboratories can produce inaccurate results leading to consumer confusion. Specifically, such

---

[5] https://www.fda.gov/drugs/drug-safety-and-availability/limited-number-voluntary-recalls-initiated-after-fda-testing-acne-products-benzene-findings-show. The court can take judicial notice of this document because documents published by FDA "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and are a matter of public record. Fed. R. Evid. 201(b). Courts routinely take judicial notice of public records of government agencies, including public comments and other documents from FDA. *See Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1058, n.6 (N.D. Cal. 2015) (taking judicial notice of "an FDA publication and an FDA presentation that was accessed from the FDA's website"); *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1207 (N.D. Cal. 2017) ("Courts routinely take judicial notice of similar FDA guidance documents, many of which also appear on the FDA's public website").

[6] FDA further stated, "[e]ven with daily use of these products for decades, the risk of a person developing cancer because of exposure to benzene found in these products is very low." *Id.*

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

methods may result in much higher reported levels of contaminants such as benzene than are actually present in tested products. It is critical that third-party laboratories reporting their results to consumers use validated methods so their results are reliable." *Id.*

### C.    Plaintiffs' Initial Consolidated Complaint

Like the other thirty-plus cases filed by Plaintiffs' counsel[7] regarding BPO acne medication, the Consolidated Complaint's allegations rested on the Valisure Report. Specifically, Plaintiffs asserted that because BPO unavoidably degrades into benzene under normal storage conditions, every single one of the Products (across all product types) contains benzene. Compl. ¶¶ 1, 51, 76. As a result of Walmart's alleged failure to disclose the presence of benzene in the Products, Plaintiffs asserted claims under state consumer protection statutes including California, Connecticut, Florida, Hawaii, Illinois, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, and Washington, and claims for breach of implied warranty of merchantability, negligent misrepresentation/omission, and unjust enrichment/quasi-contract. *Id.* ¶¶ 148-253. Multiple courts rejected Plaintiffs' theory of deception and granted motions to dismiss with prejudice on preemption grounds. *See, e.g., Howard*, 2024 WL 4272931, at *10.[8] Plaintiffs' appeals of the dismissal with prejudice of those cases is currently pending before the Ninth Circuit. *See Benzoyl Peroxide Acne Treatment Drug Products v. Alchemee, LLC et al.*, Case No. 24-6431 (9th Cir. Oct. 22, 2024); *Montenegro, et al. v. RB Health (US), LLC, et al.*, Case No. 24-6684 (9th Cir. Nov. 1, 2024); *Montenegro, et al. v. CVS Pharmacy, Inc.*, *et al.* Case No. 24-6404 (9th Cir. Oct. 21, 2024).

Plaintiffs' counsel attempted to plead around the dismissals with prejudice in the *Howard* cases through amendments to the complaints in the *O'Dea v. Alchemee* and *O'Dea v. RB Health (US) LLC* cases. There, the amended complaints asserted (albeit in a contradictory and internally inconsistent manner) that the plaintiffs' claims were now about allegedly adulterated BPO acne medication, and they were now challenging only those lots of BPO acne medication where benzene was present at

---

[7] *See In re: Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 3120 (J.P.M.L.), at ECF No. 1-2 (Schedule of Actions), later corrected at ECF No. 2.

[8] The *Howard* decision was a consolidated Order that applied to three actions: *Howard v. Alchemee, LLC*, Case No. 2:24-cv01834-SB-BFM; *Montenegro v. CVS Pharmacy, Inc.*, Case No. 2:24-cv-01876-SB-BFM; *Montenegro v. RB Health U.S. LLC*, Case No. 2:24-cv-01878-SB-BFM.

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

levels of greater than 2 ppm, which they contended was the limit for benzene imposed by FDA. 2025 WL 1212835, at *5-7. Plaintiffs contended that certain of the challenged products contained benzene exceeding the FDA imposed 2 ppm limit as a violation of cGMP. *Id*. This claim was rejected by the district court, which found that FDA had not imposed a limit of 2 ppm for benzene for OTC BPO acne medication and plaintiffs' attempt to impose such a requirement was expressly preempted. *Id*.

**D.    Plaintiffs' Amended Consolidated Complaint**

Following the January 10, 2025 motion to dismiss (ECF No. 28), and presumably the January 13, 2025 decision in *O'Dea*, Plaintiffs sought leave to file an amended complaint and the amended complaint was filed on March 13, 2025. To avoid preemption, Plaintiffs now seek to distance themselves from the allegation that BPO unavoidably degrades into benzene to avoid preemption. Like in *O'Dea*, Plaintiffs argue that FDA has set a limit for benzene in OTC BPO acne medication of 2 ppm and that any product that contains more than 2 ppm of benzene is adulterated under federal law and is not permitted to be sold. ACC ¶¶ 3, 5, 75. And while Plaintiffs still contend that BPO degrades into benzene, they now assert that "[f]easible alternative formulations, designs and materials, such as including antioxidants, were available to Defendant at the time the Products were formulated, designed, and manufactured, to prevent and/or inhibit the formation of benzene in the Products." ACC ¶ 4. Plaintiffs then allege that because *all* Products (not just certain lots) contain "harmful levels" of benzene in excess of 2 ppm, they contend that all of the Products (including all six different product types) must have been inappropriately designed or manufactured to prevent the degradation of BPO into benzene and Walmart failed to warn consumers that the Products contained benzene.[9] *See, e.g.,* ACC ¶¶ 7, 9, 56

Plaintiffs do not explain how they could determine, much less plausibly allege, that *all* six Product types manufactured by Walmart, including the individual Products purchased by Plaintiffs,

---

[9] In addition to relying on the Valisure Report and its testing of a single sample of Equate Acne Cleanser Cream, Plaintiffs allege that their counsel conducted its own testing of three individual samples of Equate Acne Treatment Gel products which resulted in the detection of eye-popping levels of benzene from 592-626 ppm (as compared to 40 from Valisure and less than 2 ppm from FDA). ACC ¶ 85. Plaintiffs do not provide any specific information about the samples they allegedly tested or whether they used an FDA recognized, validated testing methodology. https://www.fda.gov/drugs/drug-safety-and-availability/limited-number-voluntary-recalls-initiated-after-fda-testing-acne-products-benzene-findings-show .

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

1    exceeded this purported 2 ppm threshold nor do they plausibly allege that the Products they purchased

2    contained benzene at levels exceeding 2 ppm. *See* ACC ¶¶ 88-92. Nothing in the 2020 Monograph or

3    in any FDA regulation recognizes that BPO degrades into benzene, provides formulation or

4    manufacturing requirements to guard against such alleged degradation, or sets a limit for benzene in

5    OTC acne medication at 2 ppm.

6    **III.   ARGUMENT**

7        **A.   Legal Standard**

8        To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must allege all elements to

9    support Article III standing, including an injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

10   (2016). If a plaintiff fails to fails to allege facts establishing standing on the face of the complaint, the

11   complaint must be dismissed. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122

12   (9th Cir. 2010); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

13       To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

14   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

15   *Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of

16   action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The Court should

17   also disregard "legal conclusions" or "naked assertions devoid of further factual enhancement." *Id*.

18   (alterations and internal quotations omitted). Even well-pleaded factual allegations that are "merely

19   consistent" with liability fall short of plausibly alleging a claim for relief. *Id*. Rather, the facts alleged

20   must permit the Court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id*.

21       **B.   Federal Law Preempts Plaintiffs' Claims**

22           **1.   Federal Law Expressly Preempts Plaintiffs' Claims Challenging The**

23                **Labeling And Manufacturing Of The Products**

24       Despite the attempt to pivot their allegations in the ACC, Plaintiffs still seek to impose

25   requirements for the labeling and manufacturing for the Products, including formulation requirements,

26   limits on benzene, and warnings regarding the presence of benzene, that are non-identical to—and

27   expressly contradict—federal law. Accordingly, Plaintiffs' claims are expressly preempted.

28       The U.S. Constitution provides that "the Laws of the United States … shall be the supreme

8

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

Law of the Land." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, "state law that conflicts with federal law is without effect." *Cippolone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal quotations omitted). Congress may expressly preempt state law by statute. *FMC Corp. v. Holliday*, 498 U.S. 52, 56-7 (1990). Because of an overriding interest in the national uniformity and federal oversight of pharmaceutical products, Congress has expressly preempted state law claims relating to OTC medications by providing that consumers may not bring state law claims imposing any obligation on a manufacturer of OTC drugs that is "different from," "in addition to," or "otherwise not identical with" a federal requirement under the FDCA. 21 U.S.C. § 379r(a)(2); *see Gisvold v. Merck & Co.*, 62 F. Supp. 3d 1198, 1202 (S.D. Cal. 2014). Thus, a state-law claim may not require a departure from "public information [or] public communication relating to a warning of any kind for a drug." 21 U.S.C. § 379r(a)(1), (c)(2), (d)(1). "The touchstone of preemption under § 379r is the *effect* that a finding of liability on a particular claim would have on [a defendant]." *Carter v. Novartis Consumer Health, Inc*., 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008) (emphasis in original). If a claim "imposes a 'requirement' that is at variance with [the] FDA regulations, it is preempted." *Id*.

For purposes of Section 379r preemption, the 2020 Monograph, which is a binding FDA regulation, is a federal requirement under the FDCA. The 2020 Monograph requires that "[t]he labeling of the product contain[]" several specified warnings, none of which reference benzene or its risk. M006.50(c); 21 C.F.R. § 333.350(c). Moreover, the 2020 Monograph contains no provisions specifying or requiring the inclusion of antioxidants (or any other ingredients alleged by Plaintiffs) or setting temperature limitations for the manufacture or holding of BPO products. Under Section 379r, the additional requirements proposed by Plaintiffs are preempted. *See Smoter v. Mentholatum Co., Inc*., 2025 WL 273437, at *2 (N.D. Ill. Jan. 17, 2025) ("The Court finds Mentholatum's argument persuasive—the plaintiffs' theory of the case would impose a further state law requirement on Mentholatum to produce monograph-compliant products only if they also added a separate ingredient appearing nowhere in the monograph. This is inconsistent with the preemptive effect of the FDCA and FDA regulations on OTC drug manufacturing, which forbid state regulations not "identical" to federal requirements. 21 U.S.C. § 379r(a)."); *Truss v. Bayer Healthcare Pharms. Inc.*, 2022 WL 16951538, at *4 (S.D.N.Y. Nov. 15, 2022) (plaintiffs' fraud claims preempted where "the labeling

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

duties plaintiffs s[ought] to impose [were] additional to those imposed by the FDCA," and were "exactly what the FDCA does not permit") (citations omitted).

In the Consolidated Complaint, Plaintiffs asserted that "[b]ecause BPO *naturally* degrades into benzene under normal storage and transport conditions (although, accelerated by exposure to heat and humidity), *all* of Plaintiff's BPO products contained benzene." *See* Compl. ¶¶ 8, 12-40. Recognizing that this claim—that all BPO products are fundamentally defective and unsafe—is directly contradicted and preempted by the 2020 Monograph, Plaintiffs are now trying (and failing) to spin a different tale.[10] They cannot completely walk away from their theory that benzene is present in the Products as a by-product of degrading of BPO, so they now assert that the degradation process— previously characterized as unavoidable—can be avoided or delayed by utilizing different and unidentified manufacturing processes or controls that are not required by the 2020 Monograph, and that FDA regulations limit the presence of benzene in the Products to 2 ppm.

Plaintiffs' proposed requirements for different formulations and manufacturing processes, to ensure the safety of BPO products, is "fundamentally at odds with the FDA's monograph" because the FDA, through the 2020 Monograph, has already determined that acne medications "containing BPO are 'generally recognized as safe and effective' and 'not misbranded' if they comply with the monograph.'" *Howard*, 2024 WL 4272931, at *7-8 ("[the monograph] warnings do not include any mention of benzene or its risks."). There is no allegation in the ACC, nor could there be, that the Products are not manufactured in conformity with the 2020 Monograph. Walmart cannot have violated

---

[10] Courts routinely reject similar attempts to avoid preemption through artful pleading. For example, in the *Zantac (Ranitidine) Products Liability Litigation*, 2023 WL 4765409 (S.D. Fla. July 26, 2023), the plaintiffs based their claims on Valisure testing and relied on Valisure's conclusion that the drug ranitidine is defective because it "break[s] down into NDMA because of its inherent molecular design." *Id*. at *11. Despite asserting an inherent defect in the drug, plaintiffs sought to circumvent preemption by amending their complaint to include a claim that ranitidine contained NDMA because of adulteration and violation of cGMP. *Id.* at *7, *10. The court rejected this argument because of the fundamental flaw in the premise: "The Plaintiffs cannot state adulteration claims under the FDCA because they have proceeded in this MDL on the grounds that ranitidine self-adulterates . . . Stated simply, the Defendants did not contaminate ranitidine with NDMA by including NDMA in the manufacturing process—ranitidine contaminated itself by the nature of its very design." *Id*. at *11. The court accordingly rejected the plaintiffs' request to amend their complaint to add an adulteration theory. *Id*. at *12. For the same reason, this Court should reject Plaintiffs' attempt to recast their claims as cGMP claims in the ACC.

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

federal law by not formulating the Products with antioxidants or by failing to utilize vague, undisclosed manufacturing processes because the 2020 Monograph does not contain any such requirements. OTC BPO products, like the Products, that comply with the 2020 Monograph are safe to use and "sufficiently inform[] the consumer of the potential risks of using" the product. 75 Fed. Reg. at 9773.[11]

Likewise, Plaintiffs' assertion that there is a limit of 2 ppm for benzene in the Products is also preempted because there is no FDA regulation regarding benzene levels for OTC BPO acne medication nor has FDA imposed a 2 ppm benzene limit on BPO products. Plaintiffs' primary source for their assertion—the ICH Q3C Guidance—is an informal "guidance for industry" related to the amounts of residual solvents considered safe in pharmaceuticals. ACC ¶¶ 89, n. 44, 45. Indeed, the ICH Guidance cautions that it "Contains Nonbinding Recommendations" and "does not establish any rights for any person and is not binding on FDA or the public." *See, e.g., In re Procter & Gamble Aerosol Prod. Mktg. & Sales Pracs. Litig.*, 2022 WL 20178514, at *7 (S.D. Ohio Oct. 28, 2022). For these reasons, the Ninth Circuit has confirmed that the guidance invoked by Plaintiffs does not "ha[ve] the force of federal law." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1148 n.12 (9th Cir. 2024); *see also Eisman*, 2025 WL 241024, at *5 (this nonbinding guidance "lack[s] the force of law" and "does not impose on Defendants an obligation to eliminate benzene from the Products"). Regardless, the 2 ppm "limit" discussed in the ICH Guidance applies to an "entirely different class of drug products," such as those that "use carbomers manufactured with benzene." *Id.* Benzene is not an ingredient in the Products, nor is it used in the manufacture of the Products, and Plaintiffs do not allege otherwise.[12] In *O'Dea,* the district court found these arguments persuasive and dismissed the amended

---

[11] Courts have found preemption in analogous cases. *See Truss*, 2022 WL 16951538, at *4. In *Truss*, plaintiffs alleged that a product label should have disclosed the presence of benzophenone—"a hazardous impurity and degradation product of octocrylene, which is an active ingredient in the Product." *Id*. (internal quotations and citation omitted). The court disagreed, concluding that no federal requirement obligated the defendant to make such a disclosure. Instead, FDA's monograph governing sunscreen products "allows sunscreens to be formulated with the active ingredient [octocrylene], and does not require disclosure that octocrylene may degrade into benzophenone." *Id*. The court accordingly dismissed plaintiffs' state law claims as preempted. *Id*., at *4-5; *see also Harris*, 538 F. Supp. 3d 826, 833 (dismissing claims as preempted because plaintiffs sought to impose additional labeling obligations that were not imposed by the monograph).

[12] Similarly, the other FDA announcements identified by Plaintiffs relate to certain lots of pharmaceutical and other products that were inadvertently contaminated with benzene during the manufacturing process. ACC ¶¶ 91-92.

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

complaint with prejudice because "Plaintiffs have not plausibly alleged that the FDCA prohibits Defendants from selling acne medications containing more than 2 ppm of benzene—let alone products that may degrade to contain more than 2 ppm of benzene during their shelf life . . . Because the FDCA and the FDA's regulations establish no such limit . . . [t]heir claims are therefore expressly preempted and must be dismissed." 2025 WL 1212835, at *7. The same result should follow here.

Plaintiffs assert that Walmart failed to include warnings or disclosures about benzene in the "advertising, label, container, and warnings" of the Products. *See, e.g.,* ACC ¶¶ 4, 164-166. These claims are also preempted by the 2020 Monograph because they seek to impose requirements "that [are] not imposed by the FDA's monograph." *Howard*, 2024 WL 4272931, at *9 (citation omitted); *Seale v. GSK Consumer Health, Inc.*, 718 F. Supp. 3d 1208, 1222 (C.D. Cal. 2024) (omission-based claims preempted because they would impose "an *actual requirement* of . . . explicit disclosure" not mandated by FDA regulations); *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831–33 (N.D. Ill. 2021) (claims alleging misleading omission of disclaimers not required by the monograph preempted).

### 2. Federal Law Impliedly Preempts Plaintiffs' State-Law cGMP Claims

In addition, Plaintiffs' attempt to privately enforce FDA's cGMP regulations is impliedly preempted. There is no private right of action under the FDCA. *See* 21 U.S.C. § 337(a). Instead, Congress provided that "[t]he FDA is responsible for investigating potential violations of the FDCA, and the Act provides the agency with a range of enforcement mechanisms." *Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013). Accordingly, Plaintiffs cannot bring claims against Walmart seeking to enforce cGMP regulations. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348, 350 (2001). In *Buckman,* the Supreme Court found that most attempts to use state law to enforce FDA requirements "conflict with, and are therefore impliedly pre-empted by federal law," because "complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing [companies]—burdens not contemplated by Congress in enacting the FDCA." 531 U.S. 341, 348, 350 (2001). In so doing, the Supreme Court rejected the proposition "that any violation of the FDCA will support a state-law claim," finding that state law claims that "exist solely by virtue of" a violation of the FDCA are implicitly preempted. *Id.* at 353.

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

The combination of express preemption under Section 379r and implied preemption under *Buckman* leaves only a "narrow gap through which a state-law claim must fit to escape preemption by the FDCA." *Perez*, 711 F.3d at 1120 (cleaned up). As the Ninth Circuit explained, "[t]he plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted …), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under Buckman)." *Id.* In other words, a plaintiff must be able to allege a violation of state regulatory requirements that are independent of the FDCA but do not go beyond the FDCA's requirements. "As a result of this preemptive structure, the overwhelming majority of state law tort claims, including claims based on negligence, design defect, manufacturing defect, failure to warn, fraud, negligent misrepresentation, breach of implied and express warranties, unfair competition, and false advertising, have been held preempted." *Poozhikala v. Medtronic Inc.*, 2022 WL 1076173, at *4 (C.D. Cal. Apr. 7, 2022) (cleaned up).

In *Perez*, plaintiffs accused the defendant of violating California law's prohibition against selling adulterated devices. *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1168 n.6 (S.D. Cal. 2009). The claim of "adulteration" was based on an alleged failure to comply with federal requirements (in that case, to disclose that the device was not FDA-approved for a particular surgery). *Id.* at 1167-68. The plaintiffs attempted to bring a state-law omission claim based on this theory, but the Ninth Circuit held the case was properly dismissed on implied preemption grounds as "an attempt to privately enforce the FDCA." *Perez*, 711 F.3d at 1117. There, as here, plaintiffs were "suing because the conduct violates the FDCA," meaning "the existence of these federal enactments is a critical element in [plaintiffs'] case." *Id.* at 1119-20 (cleaned up).

Plaintiffs' claims do not navigate the "narrow gap" because they are nothing more than an impermissible attempt to assert an alleged FDCA violation. The ACC itself admits that it is seeking to enforce cGMP regulations and does not assert any basis for relief other than alleged enforcement of the cGMP regulations. Courts in the Ninth Circuit regularly dismiss as impliedly preempted claims that "hinge[] entirely on conduct she claims violates the FDCA as well as the FDA's [cGMPs]." *Ebrahimi v. Mentor Worldwide LLC*, 2017 WL 4128976, at *6 (C.D. Cal. Sept. 15, 2017), *aff'd*, 804 F. App'x 871 (9th Cir. 2020); *see also Avrin v. Mentor Worldwide LLC*, 2024 WL 1151672, at *3

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

(C.D. Cal. Mar. 15, 2024) (finding claims regarding products "not manufactured in compliance with CGMPs" impliedly preempted, as "saying the [products] were 'adulterated' does not invoke a magic word that automatically saves Plaintiffs' claims from preemption"); *Frere v. Medtronic, Inc.*, 2016 WL 1533524, at *7 (C.D. Cal. Apr. 6, 2016) ("[M]anufacturing defect claim is impliedly preempted under Buckman, because Plaintiff's entire claim rests on conduct Plaintiff claim that Defendants violated the FDA's CGMPs."); *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022) (When "[t]he purported state law violation is of a law that says in substance 'comply with the FDCA,' not a traditional common law tort," and when plaintiff argues they have been "harmed economically because the defendant violated the FDCA," the claims are impliedly preempted); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 773 (C.D. Cal. 2019) (plaintiff who "technically brought [her claim] under the UCL and the Sherman Law" but did so "rel[ying] heavily on FDA warning letters and informal guidance" had the true goal of "privately enforc[ing] alleged violations of the FDCA," rendering her claims impliedly preempted (cleaned up)); *Argueta v. Walgreens Co.*, 2024 WL 5186825, at *6-7 (E.D. Cal. Dec. 20, 2024) (dismissing complaint "premised upon the lawfulness of Defendant's sale of [pain relief products] under the FDCA" as impliedly preempted).

Implied preemption applies when "a claim would require litigating … whether an FDCA violation had occurred." *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 849 (9th Cir. 2024). Plaintiffs' claims challenging the formulation and manufacturing of BPO products fits squarely within that requirement because their allegations "are contingent upon standards set by the FDCA and alleged violations of the FDA's regulations," *Bruno v. BlueTriton Brands, Inc.*, 2024 WL 3993861, at *3 (C.D. Cal. Aug. 8, 2024) (finding implied preemption after discussing *Perez*, *Nexus*, and *Davidson*). There should be no real question that federal law preempts Plaintiffs' state tort claims. This case should therefore be dismissed.

## C.    Plaintiffs' cGMP Regulations Flunk The Rule 8 Pleading Standard

Even if they were not preempted, Plaintiffs' claims surrounding the alleged violation of cGMP regulations fail for another reason: They rest on allegations that are purely conclusory. *See* ACC ¶¶ 104-110. As such, they flunk the Rule 8 pleading standard because they "tender 'naked assertion[s]'

---

14

devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The ACC contains no plausible factual allegations that any cGMP was violated in the manufacture or holding of any of the Products. In the ACC, Plaintiffs merely recite verbatim the entirety of the cGMP regulations (*id.* ¶¶ 101-103) and then flatly assert "upon information and belief" that Walmart failed to comply with those regulations because, if it had complied, then no benzene would be detected in the Products. ACC ¶ 104.[13] Plaintiffs do not (and cannot) allege what Walmart could have done differently—within the confines of the regulations and the Monograph—to manufacture each type of Product to preclude the alleged degradation of BPO in each product into benzene at levels exceeding 2 ppm.

To state a claim surviving a motion to dismiss in this context, a plaintiff must plausibly allege "the existence of a manufacturing defect caused by a violation of federal regulations and allegations connecting a defect in the manufacture of the specific device to that plaintiff's specific injury."); *Bass v. Stryker Corp.*, 669 F.3d 501, 511 (5th Cir. 2012); *see also D'Addario v. Johnson & Johnson*, 2021 WL 1214896, at *5 (D.N.J. Mar. 31, 2021) (dismissing claims for failure to make "*specific allegations that the manufacturing of the [product] … fell short of the FDA's requirements for manufacturing*"); *Conley v. St. Jude Med., LLC*, 482 F. Supp. 3d 268, 277 (M.D. Pa. 2020) ("[C]ourts have regularly found that general citations to the GMPs or federal regulations are not specific enough to sustain a parallel claim."); *cf. Tripolskiy v. Boston Sci. Corp.*, 2023 WL 5440783, at *4 (C.D. Cal. June 23, 2023) (rejecting sufficiency of complaint and holding cGMP claims preempted where the complaint did not "allege sufficient facts to support an inference that Defendant violated requirements.").

Plaintiffs "essentially contend[] that the [C]ourt can plausibly infer that [Defendant] must have violated at least one of the FDA's CGMPs by not catching" the alleged benzene. *Ebrahimi*, 804 F. App'x at 872 (affirming dismissal). But that is not good enough because bare speculation without supporting factual allegations is insufficient. *See Weber v. Allergan, Inc.*, 940 F.3d 1106, 1114 (9th

---

[13] Nor could Plaintiffs allege otherwise, as the Products are manufactured under strict quality control procedures in FDA-registered facilities in compliance with cGMP regulations and the 2020 Monograph.

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

Cir. 2019) ("mere evidence suggesting that [plaintiff's product] was defective does not show that [defendant] failed to comply with the FDA's Current Good Manufacturing Practices."); *Tripolskiy*, 2023 WL 5440783, at *4.

Moreover, the ACC contains no plausible factual allegations demonstrating that *all* Products were manufactured in violation of cGMP, resulting in the presence of benzene at levels that exceed 2 ppm. Plaintiffs make the conclusory allegation that "[a]ll of Defendant's Products are manufactured in the same manner during the relevant time period," but offer no supporting factual allegations (much less plausible ones) to demonstrate that is the case. ACC ¶ 55. But the Products are private label versions of multiple types of BPO acne medication (creams, cleansers, lotions, and gels). There is no reason to believe, and none is provided in the ACC, that these different types of BPO acne medications, which could be manufactured by different suppliers, would all be manufactured in an identical fashion throughout the class period. That bare assertion is not merely unsupported by plausible allegations; it is implausible on its face.

Similarly, Plaintiffs do not explain how the alleged degradation of BPO into benzene in the Products occurred in a systematic and uniform way over the entire class period. Again, Plaintiffs make the conclusory assertion that this is the case but offer no facts in support. ACC ¶¶ 56-57 (the "rates of degradation and benzene impurities in the BPO Products occur at a systematic rate."). Not only does the range of Products contain different product types in different mediums, but they contain different concentrations of BPO (ACC ¶ 1 at n.1), and Plaintiffs do not explain how rates of degradation would remain consistent given these variables. And while Plaintiffs contend that temperature causes BPO to degrade into benzene, they assert that alleged exposure to "high" temperatures triggering the degradation could have occurred at several different times in several different ways, including at some stage during the manufacturing process or during the holding process. Further undermining Plaintiffs' position, they alternatively claim that the alleged benzene contamination could be completely unrelated to temperature and instead be caused by "improper inputs, failure to clean, maintain, and sanitize equipment." ACC ¶ 104. Given these facts, and Plaintiffs' admission that not all BPO degrades into benzene, it is unsurprising that the Valisure Report (the basis for Plaintiffs' lawsuit), hypothesizes that the alleged degradation of BPO is not systematic but is a variable function of time and temperature,

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

which resulted in the purported discovery of varying levels of benzene across different samples. *See generally* Valisure Report. Given the ACC's conclusory allegations and internal contradictions, there is no plausible basis to conclude that the alleged degradation process would be uniform across all products and result in benzene adulteration of every single Product at levels exceeding 2 ppm for the entire class period.

For these reasons, Plaintiffs' claims based on a failure to comply with cGMP regulations should be dismissed.

### D.    Plaintiffs Lack Article III Standing

A complaint "must 'clearly ... allege facts demonstrating' each element" of standing. *Spokeo*, 578 U.S. at 338. "To establish injury in fact," the core requirement of standing, "a plaintiff must [plead] ... 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Id*. at 339. In other words, the asserted injury "must affect the plaintiff in a personal and individual way," and must be "real," not "abstract." *Id*. at 338-40; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury is concrete if it "actually exist[s]"; it must be "real and not abstract." *Spokeo*, 578 U.S. at 340 (cleaned up). A harm is particularized if it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. "Where multiple claims in a complaint are based on the same factual allegations, the same injury-in-fact requirement applies to all such claims." *Winters v. Ridgewood Indus., LTD.*, 2020 WL 3035217, at *2 (E.D. Cal. June 5, 2020). Here, Plaintiffs allege only a hypothetical injury because they cannot plausibly allege any concrete physical or economic injury. They therefore lack Article III standing.

Notably, Plaintiffs expressly disclaim any personal injury. ACC ¶ 151 (excluding from the putative class individuals who allege "personal bodily injury resulting from the use of the BPO Products"). Instead, they seek only economic damages associated with their purchases. *Id*. ¶¶ 42-43. They allege that, although they contentedly used the Products for years, they now believe they overpaid in light of the Valisure testing results. That allegation of injury rooted in what Plaintiffs might have paid for a product that they nevertheless would have purchased is quintessentially hypothetical. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 280-81 (3d Cir. 2018) (finding no injury pleaded by allegations that plaintiff would not have paid

17

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

premium price if informed of safety risk). Plaintiffs plainly were satisfied with the Products throughout their use of that product for as long as multiple decades, and they do not allege that the Products failed to treat their acne. *Estrada v. Johnson & Johnson*, 2015 WL 1440466, at *4-5 (E.D. Cal. Mar. 27, 2015) ("continued purchase" suggested plaintiff "benefit[ed] from" the product "and believed it was worth the price"); *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) (dismissing for lack of standing, in part, because plaintiffs "do not plead that the products failed to perform").

And even assuming that Plaintiffs' price-discount theory is sufficient to support standing, Plaintiffs have not plausibly alleged that they purchased Products containing benzene at levels exceeding 2 ppm. The ACC challenges six types of Products sold over a four-year period. But Plaintiffs test (at most) four individual samples relating to only two product types. *See* ACC ¶¶ 84-85. Even if those test results could be believed, they cannot be extrapolated across six distinct product lines that were the subject of the Plaintiffs purchases. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("Without any particularized reason to think the consumers' own [purchased product] actually exhibited the alleged . . . defect, the consumers lack Article III standing."); *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013) (no standing where plaintiff did not allege facts that her consumption of the products was "sufficient to cause the enumerated harmful effects," despite "significant evidence of the harmful effects of prolonged consumption"). Plaintiffs' conclusory allegation that "[t]he rates of degradation and benzene impurities in the BPO Products occur at a systematic rate;" does not save their claim. ACC ¶¶ 56-57. As discussed above, *supra* at 5, not only is this allegation implausible, but Plaintiffs contradict themselves because Valisure and Plaintiffs' purported testing demonstrated different levels of benzene in the Products—showing that even if Plaintiffs' theory were true, BPO does not degrade to benzene at precisely the same rate at the point of sale. *See* ACC ¶¶ 81-85. Moreover, FDA testing of BPO acne medication that postdates the filing of the ACC did not indicate that any Walmart product was contaminated with benzene. "At most," then "the plaintiffs plead a potential risk of [benzene exposure] not to themselves, but to other unidentified [consumers] who might *choose* to use [the Products] in an unsafe manner." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (emphasis

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

in original). To the extent that Plaintiffs' allegations turn on benzene being present in the Products in amounts greater than 2 ppm, they have failed to allege facts to plausibly support that all Products contain benzene exceeding that amount.

Furthermore, even if Valisure's and Plaintiffs' testing established the presence of benzene in a very small number of samples of two of the Products, Plaintiffs fail to allege that the Products they purchased shared product codes or lot numbers with, or even were manufactured close in time to, those tested by Valisure or Plaintiffs' counsel. These allegations are insufficient to allege a concrete injury because there is no showing that the Products purchased by Plaintiffs were similarly affected. *Huertas v. Bayer U.S., LLC*, 2022 WL 3572818, at *5-6 (D.N.J. Aug. 19, 2022) (alleged risk of future injury from benzene was insufficiently concrete or particularized to plead standing); *Bodle v. Johnson & Johnson Consumer Inc.*, 2022 WL 18495043, at *2 (N.D. Cal. Feb. 24, 2022) (finding no injury and thus dismissing when plaintiff failed to allege she purchased products from specific batches tested by Valisure); *Nelson v. John Paul Mitchell Systems*, 2024 WL 4265198, at *3 (N.D. Ill. Sept. 23, 2024) (plaintiffs lacked standing for claims based on Valisure testing). Again, this is particularly the case where Plaintiffs do not allege to have tested certain Products at all. Accordingly, Plaintiffs fail to plausibly allege that they purchased Products that contain purportedly unsafe levels of benzene, and thus, have not met their burden to show that they have standing to bring their claims.

Because Plaintiffs allege no concrete and particularized injury sufficient for Article III standing, the Court lacks subject matter jurisdiction and should dismiss this action in its entirety.

### E.    Plaintiffs Lack Standing To Pursue Injunctive Relief

Plaintiffs lack Article III standing to pursue injunctive relief because they do not allege that they are likely to suffer imminent and substantial future injury absent an injunction. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Plaintiffs must demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way," but they fail to make those allegations. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Here, Plaintiffs allege no facts plausibly suggesting that *they* are at risk of future harm. Instead, they allege only that Walmart's alleged violations "are ongoing and continu[e] to cause harm." ACC ¶¶ 167, 183, 222. Plaintiffs do not allege that they plan to buy the Products in the future if appropriate

disclosures are made (which would undermine their claim that the Products are worthless). *See id.* ¶¶ 8, 116, 146; *Hayden v. Retail Equation Inc.*, 2023 WL 2629885, at *4 (C.D. Cal. Mar. 2, 2023) (plaintiffs lacked standing because they failed to allege that they "intend[ed] to purchase products from . . . [d]efendants again"). And even if they do, now that they are aware of the facts, they cannot plausibly allege that they may be deceived by the Products' advertising or labeling in the future. *See Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1165 (C.D. Cal. 2023) (the "threat of future injury is determined by the plaintiff's ability to perceive subsequent misrepresentations based on past experience."); *see also Howard*, 2024 WL 4272931, at *5 (finding no standing for injunctive relief because plaintiffs could avoid any alleged misrepresentation by "look[ing] at the label"). The Court should therefore dismiss Plaintiffs' claims for injunctive relief.

### F.    Plaintiffs Do Not Adequately Allege Consumer Deception Or False Advertising

The ACC asserts of action for violation of California consumer protection laws, including the UCL (Count I) and CLRA (Count II), a catch-all cause of actions for false advertising on behalf of state sub-classes under the laws of three states (Count III), and violation of the "deceptive trade practices" under the laws of seventeen states on behalf of nationwide and state sub-classes (Count IV). These omission-based claims fail because Plaintiffs have not established a duty to disclose and, contrary to the allegations in the ACC, there "is no obligation [under consumer protection laws] to provide whatever information a consumer might like to know." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022).

Plaintiffs cannot state a claim under an omission theory under California law because there is no duty to disclose the allegedly omitted information. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) ("California courts have generally rejected a broad obligation to disclose[.]"). California recognizes a duty to disclose in very limited circumstances, where the omission either (1) relates to an unreasonable safety hazard or (2) is central to the product's function and meets one of the four *LiMandri* factors. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861-62 (9th Cir. 2018) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). Plaintiffs cannot establish a duty to disclose under either of these tests.

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

First, Plaintiffs do not plausibly allege an unreasonable safety risk associated with the use of OTC BPO acne medication The ACC ignores that FDA has approved benzoyl peroxide as "generally recognized as safe," and has not recalled any of the challenged Products, despite recently testing numerous brands for benzoyl peroxide. Indeed, FDA, having reviewed Valisure's citizen petition, did not find its conclusions credible and found no basis for a widescale recall of BPO acne medications or for the inclusion of any warnings related to benzene. Similarly, Plaintiffs do not have any credible (much less actual) allegations that the Products were manufactured in violation of cGMPs and that such failure caused them to contain unsafe levels of benzene. Accordingly, Plaintiffs have not demonstrated any safety risk with using the Products, let alone an "unreasonable" one.

Second, Plaintiffs cannot assert a duty to disclose under the "central function" test. Satisfying that test requires Plaintiffs to establish that the alleged defect renders the product "incapable of use by any consumer." *Hodsdon*, 891 F. 3d at 864. Plaintiffs cannot show that BPO acne medication is not a "safe and effective" treatment for acne. Regardless, Plaintiffs cannot meet any of the *LiMandri* factors. Defendants do not have a fiduciary relationship with Plaintiffs. *Id*. at 862. Plaintiffs have expressly conceded that Walmart lacked "exclusive knowledge" of the allegedly omitted facts. *Id*.; ACC ¶ 78; 121 ("BPO degrades to benzene when exposed to high heat over time. This process was first reported in scientific literature as early as 1936."). Plaintiffs assert no "active[] conceal[ment]" by Walmart. *Hodsdon*, 891 F.3d at 862 (quoting *LiMandri*, 52 Cal. App. 4th at 336); *Myers v. BMW of N. Am., LLC*, 2016 WL 11791913, at *4 (N.D. Cal. Dec. 19, 2016) (active concealment means seeking "to suppress information in the public domain or obscure the consumers' ability to discover it" (citation omitted)). And Plaintiffs do not allege any affirmatively misleading "partial representation[]." *Hodsdon*, 891 F.3d at 862 (quoting *LiMandri*, 52 Cal. App. 4th at 336). Plaintiffs' omission theories therefore fail and their California consumer claims should be dismissed.

As with California law, the other state laws at issue in the ACC recognize that an omission is actionable if a defendant has a duty to disclose. As in California, to gauge the existence of a duty to disclose, courts examine whether: (1) defendant partially disclosed information; (2) defendant has exclusive or superior knowledge of material facts not known or reasonably accessible to plaintiffs; (3) defendant actively conceals a material fact from plaintiffs; and (4) there is a safety concern that a

1   reasonable consumer could not determine on their own through reasonable diligence.

2          First, New York and other states apply the "exclusive or superior knowledge test" for

3   omissions claims.[14] To meet this standard, Plaintiffs must plausibly allege that Walmart "alone

4   possesses material information that is relevant to the consumer and fail[ed] to provide this

5   information" and that Plaintiffs could not "reasonably have obtained the relevant information they

6   now claim the [defendant] failed to provide." *Oswego Laborers' Loc. 214 Pension Fund v. Marine*

7   *Midland Bank, N.A*., 85 N.Y.2d 20, 26-27 (1995); *Paradowski v. Champion Petfoods USA, Inc*., 2023

8   WL 3829559, at *3 (2d Cir. June 6, 2023). But, as Plaintiffs concede, Walmart did not have exclusive

9   knowledge of the allegedly omitted facts. Second, Plaintiffs do not plausibly allege that Walmart

10  concealed material facts.[15] "Mere nondisclosure does not constitute active concealment," and

11  "generalized allegations with respect to active concealment will not do." *Ahern v. Apple Inc*., 411 F.

12  Supp. 3d 541, 576-77 n.5 (N.D. Cal. 2019) (citations omitted); *see also Devane v. L'Oreal USA, Inc.*,

13  2020 WL 5518484, at *5 (S.D.N.Y. Sept. 14, 2020) (fraud claims insufficient when based on

14  "conclusory allegations regarding Defendant's knowledge and intentions"). Third, Plaintiffs do not

15  allege that Walmart made any partial disclosures that gave rise to a duty to disclose.[16] Finally, Plaintiffs

16  do not allege that they were in a special relationship akin to a fiduciary relationship with Walmart.[17]

17

18

19  [14] The laws include those of Connecticut, Florida, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New York, Pennsylvania, and Washington. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *19 n.9 (D.N.J. May 8, 2017); *AcBel Polytech v. Fairchild Semiconductor Int'l, Inc.*, 2014 WL 4656608, at *10 (D. Mass. Sept. 12, 2014); *Driscoll v. Standard Hardware*, 785 N.W.2d 805, 812 (Minn. Ct. App. 2010); *Short v. Hyundai Motor Co*., 444 F. Supp. 3d 1267, 1280 (W.D. Wash. 2020).

20

21

22  [15] This standard applies under the laws of California, Colorado, Connecticut, Delaware, Florida, Indiana, Kansas, Maryland, Michigan, Minnesota, Nevada, New Hampshire, North Carolina, North Dakota, Pennsylvania, Washington. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *24; *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987); *Diemert v. Johnson*, 299 N.W.2d 546, 548 (N.D. 1980).

23

24

25

26  [16] This standard applies under the laws of Massachusetts, Minnesota, and New Jersey. *AcBel Polytech*, 2014 WL 4656608 at *10; *Driscoll*, 785 N.W.2d at 812-13; *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 at *20.

27

28  [17] This standard applies under the laws of Massachusetts, Minnesota, and New Jersey. *AcBel Polytech*, 2014 WL 4656608 at *10; *Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002); *Roe v. Ford Motor Co.*, 2021 WL 2529825, at *9-10 (E.D. Mich. 2021).

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

**G.    Plaintiffs' State Law Claims Fail For Additional Independent Reasons**

**1.    Plaintiffs Cannot State A Claim For Breach of Implied Warranty**

Plaintiffs' breach of implied warranty of merchantability claim also fails. Plaintiffs purport to bring claims on behalf of a nationwide class, unidentified state classes, and California sub-class members, but do not identify what law applies to which claims. ACC ¶ 228 ("Plaintiffs bring this cause of action pursuant to California law, or, in the alternative, under the state laws of their respective domicile").[18] Under California law, to plead such a claim, Plaintiffs must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010).[19] The Products' intended function is as an OTC acne medication and the ACC does not allege that it failed to treat Plaintiffs' acne, its intended purpose. Because the Products did not "lack[] even the most basic degree of fitness for ordinary use," the implied warranty claims fail. *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1178-79 (N.D. Cal. 2022) (citations omitted) (dismissing implied warranty claims in connection with herbs and spices allegedly containing toxic heavy metals); *Tietsworth*, 720 F. Supp. 2d at 1143 (dismissing implied warranty claim where plaintiff never alleged that the washing machine "failed to serve its essential purpose—washing clothes").

Moreover, Plaintiffs' attempt to characterize potential benzene exposure as a product defect does not save this claim. Plaintiffs fail to allege that the Products they used degraded to contain benzene, particularly more than their arbitrary 2 ppm threshold. A defect that has not actually manifested can only support an implied warranty claim if it is "substantially certain" to occur. *Keegan*

---

[18] Plaintiffs make no other specific allegations to comply with the laws of states other than California, and, indeed, non-California Plaintiffs do not have standing to bring claims on behalf of citizens of California. *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (where a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal."); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009) (dismissing state claims without a representative plaintiff). Accordingly, to the extent that Plaintiffs purport to bring claims under the laws of states other than California, their claims must be dismissed. *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) (dismissing claim with no specified governing law, given differences in state laws).

[19] The laws of other states are in accord. *See Provanzano v. MTD Prods. Co.*, 215 F. Supp. 3d 134, 137–38 (D. Mass. 2016) (applying Massachusetts law); *Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1470 (D. Nev. 1992) (applying Nevada law); *Justice v. Bestway (USA), Inc.*, 2024 WL 3718724, at *9 (E.D. Mo. Aug. 8, 2024) (applying Missouri law), *reconsideration on other grounds*, 2024 WL 5264386 (E.D. Mo. Dec. 3, 2024); *Griffin v. Medtronic, Inc.*, 2017 WL 4417821, at *5 (N.D. Ill. Oct. 5, 2017) (applying Illinois law).

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

*v. Am. Honda Motor Co.*, 284 F.R.D. 504, 537 (C.D. Cal. 2012). Valisure's purported "testing" and its methodology of super-heating BPO products and Plaintiffs vague and conclusory allegations of violations of cGMPs in no way establishes that the presence of benzene is "substantially certain" to occur from use of the Products as directed.

### 2. Plaintiffs' Negligent Misrepresentation Claims Fails

Plaintiffs' claim for negligent misrepresentation fails under the economic loss doctrine. That doctrine provides that a purchaser of products cannot recover "for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *10 (C.D. Cal. Apr. 13, 2017) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). Here, no Plaintiff alleges any physical injury attributable to the use of the Products. Rather, Plaintiffs' theory of harm is that "they would not . . . have purchased" the Products or would have "paid less" if they had known about the alleged benzene. ACC ¶ 42. The economic loss rule therefore precludes Plaintiffs' claim for negligent misrepresentation. *Resnick*, 2017 WL 1531192, at *10; *see also Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 908-10 (8th Cir. 2013) (same, under Missouri law); *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120-21 (N.D. Ill. 2019) (same, under Illinois law); *Kuecker Logistics Grp., Inc. v. Greater Omaha Packing Co., Inc.*, 2023 WL 3198418, at *22 (D. Neb. Apr. 14, 2023) (same, under Nebraska law).

### 3. Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs' unjust enrichment claims are not tied to any separate alleged wrongdoing but instead seek an additional remedy for the same conduct that underlies Plaintiffs' other claims. Where a plaintiff's "unjust enrichment claim rests on the same improper conduct alleged in another claim, … unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (applying Illinois law); *see also Hennessey v. Gap, Inc.*, 2022 WL 4447399, at *8 (E.D. Mo. Sept. 23, 2022) (dismissing unjust enrichment claim that "rests on the same foundation as her [defective] MMPA claim"), aff'd, 86 F.4th 823, 831 (8th Cir. 2023); *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 419 (S.D.N.Y. 2022) (same); *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *7 (N.D. Cal. June 14, 2021) (same). Because Plaintiffs' unjust enrichment claim is

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT

premised on the same factual basis as their other claims, it should be dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, and for good cause shown, the ACC should be dismissed with prejudice.

Dated: April 28, 2025                         KING & SPALDING LLP

                                              By: /s/ Keri E. Borders
                                              Keri E. Borders
                                              Livia M. Kiser

                                              *Attorney for Defendant*
                                              WALMART, INC.

MEMORANDUM ISO MOTION TO DISMISS COMPLAINT